**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:**<br><br>**ELECTRONIC DEVICES SEIZED FROM 2800 PAGE COURT, FALLSTON, MARYLAND 21047, AND THE PERSON ROBERT WYATT JR., CURRENTLY AT THE OFFICE OF HOMELAND SECURITY INVESTIGATIONS AND FURTHER DESCRIBED IN ATTACHMENT A** | **MISC NO.**  22-mj-2450-MJM<br><br>✓ ____ FILED  ___ ENTERED<br>____ LOGGED ____ RECEIVED<br><br>**10:43 am, Sep 30 2022**<br>AT  BALTIMORE<br>CLERK, U.S. DISTRICT COURT<br>DISTRICT OF MARYLAND<br>BY _____Deputy |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION FOR SEARCH WARRANT**

I, Kelly M. DiAntonio, a Special Agent (SA) with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, depose and state as follows:

1.        I have been employed as a Special Agent ("SA") of the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI") since April 2012.  As part of the daily duties as an HSI Special Agent, your Affiant investigates criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of Title 18, U.S.C. §§ 2251 and 2252A.  I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations.  Specifically, I have received formal training through HSI, and other agencies in the area of child pornography, pedophile behavior, collectors of other obscene material, and internet crime.  I have participated in the execution of numerous search warrants, of which the majority has involved child exploitation and/or child pornography offenses.  Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for

1

computers, other electronic media, and other items evidencing violations of federal laws, including various sections of Title 18, United States Code § 2252A involving child exploitation offenses.  I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography.  In the course of my employment with the HSI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2.      As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

### PURPOSE OF THIS AFFIDAVIT

3.      This Affidavit is made in support of an application for search warrants to search:

(a) Electronic devices seized from 2800 Page Court, Fallston, Maryland. 21047, and the person Robert WYATT Jr., currently in the possession of Homeland Security Investigations in Baltimore, Maryland **(TARGET DEVICES)** more specifically described in Attachment A, which is incorporated herein by reference

and to seize the items and records described in Attachment B.

4.      The purpose of this application is to seize evidence of violations of 18 U.S.C. § 2252A(a)(2), which prohibits and distribution of child pornography and  18 U.S.C. § 2252A(a)(5)(B), which prohibits the possession of child pornography (the "**TARGET OFFENSES**").

5.      The statements in this Affidavit are based in part on information provided by other law enforcement officers and on my investigation of this matter.  Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of the **TARGET OFFENSES** are located within the **TARGET DEVICES**.

### BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, THE INTERNET, AND EMAIL

6.      I have had both training and experience in the investigation of computer-related crimes.  Based on my training, experience, and knowledge, I know the following:

a.      Computers and digital technology have dramatically changed the way in which individuals interested in child pornography interact with each other.  Computers basically serve four functions in connection with child pornography:   production, communication, distribution, and storage.

b.      Child pornographers can now transfer printed photographs into a computer-readable format with a device known as a scanner.  Furthermore, with the advent of digital cameras and smartphones with cameras, when a photograph is taken it is saved as a digital file that can be directly transferred to a computer by simply connecting the camera or smartphone to the computer.  In the last ten years, the resolution of pictures taken by digital cameras and smartphones has increased dramatically, meaning that such pictures have become sharper and crisper.  Photographs taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone.  These memory cards often store up to 32 gigabytes of data or more, which provides enough space to store thousands of high-resolution photographs.  Video camcorders, which once

recorded video onto tapes or mini-CDs, now can save video footage in a digital format directly to a hard drive in the camera.  The video files can be easily transferred from the camcorder to a computer.

        c.      A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.  Child pornography can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services (*i.e.*, "instant messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

        d.      The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.  In addition, there are numerous options available for the storage of computer or digital files.  One-terabyte or larger external and internal hard drives are not uncommon.  Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer.  It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage

devices (CDs and DVDs are unique in that special software must be used to save or "burn" files onto them). Some media storage devices can easily be concealed and carried on an individual's person.

e.      The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f.      Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Google, Yahoo!, and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer or external media in most cases.

g.      As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (*i.e.*, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as that the traces of the path of an electronic communication may be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO POSSESS AND/OR ATTEMPT TO VIEW CHILD PORNOGRAPHY

7.      Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who possess and/or attempt to view child pornography:

a.      Such individuals often receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, in other visual media, or from literature describing such activity.

b.      Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media.  Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.      Such individuals may possess and maintain hard copies of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.  Individuals who have a sexual interest in children or images of children often retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.      Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area.  These child pornography images are often maintained for several years and are

kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly.  Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e.    Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[1]

f.    Such individuals also may correspond with and/or meet others to share information and materials, rarely completely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, telephone numbers, and usernames of individuals with whom they have been in contact and who share the same interests in child pornography.

g.    Such individuals prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.  Thus, even if a person uses a portable device (such as a mobile phone) to access the Internet and child pornography, it is more

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774, 778 (7th Cir. 2012) (Posner, J.) (collecting cases, *e.g.*, *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370-71 (4th Cir. 2010); and *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010), for the principle that the "same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography").

likely than not that evidence of this access will be found in such a location as the **TARGET DEVICES**.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

8.     Based upon my training and experience, and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage.  I also know that during the search of a premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a.   Searching computer systems is a highly technical process which requires specific expertise and specialized equipment.  There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search.  In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application, or operating system that is being searched;

b.   Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data.  Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Since computer data is particularly vulnerable to inadvertent or intentional modification or

destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

        c.  The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

        d.  Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions.  For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text.  Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form.  In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography."  For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened.  Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

        9.    Based on my own experience and my consultation with other agents who have been involved in computer searches, searching computerized information for contraband, evidence, fruits, or instrumentalities of a crime often requires the seizure of all of a computer system's input and output peripheral devices, related software, documentation, and data security devices (including passwords), so that a qualified computer expert can accurately retrieve the

9

system's data in a laboratory or other controlled environment.  There are several reasons that
compel this conclusion:

      a.     The peripheral devices that allow users to enter or retrieve data from the
storage devices vary widely in their compatibility with other hardware and software.  Many system
storage devices require particular input/output devices in order to read the data on the system.  It
is important that the analyst be able to properly re-configure the system as it now operates in order
to accurately retrieve the evidence listed above.  In addition, the analyst needs the relevant system
software (operating systems, interfaces, and hardware drivers) and any applications software
which may have been used to create the data (whether stored on hard drives or on external media),
as well as all related instruction manuals or other documentation and data security devices; and

      b.     In order to fully retrieve data from a computer system, the analyst also
needs all magnetic storage devices, as well as the central processing unit (CPU).  Further, the
analyst needs all the system software (operating systems or interfaces, and hardware drivers) and
any applications software that may have been used to create the data (whether stored on hard
drives or on external media) for proper data retrieval.

      10.     Additionally, based upon my training and experience and information related to
me by agents and others involved in the forensic examination of computers, I know that routers,
modems, and network equipment used to connect computers to the Internet often provide
valuable evidence of, and are instrumentalities of, a crime.  This is equally true of so-called
"wireless routers," which create localized networks that allow individuals to connect to the
Internet wirelessly.  Though wireless networks may be "secured" (in that they require an
individual to enter an alphanumeric key or password before gaining access to the network) or
"unsecured" (in that an individual may access the wireless network without a key or password),

wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime—including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network.  Moreover, I know that individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

## **PROBABLE CAUSE**

Overview of the Investigation:

11.     This investigation has revealed that Robert WYATT JR (WYATT JR) (12/05/1968), of 2800 Page Court, Fallston, Maryland, possessed child pornography in violation of federal law. On August 31, 2021, the Maryland State Police were conducting an online investigation on the BitTorrent[2] network searching for offenders who were distributing child pornography. An investigation was initiated on a device utilizing IP address 100.16.46.54, which was associated with a torrent file that was identified as being of investigative interest in child pornography investigations.

---

[2] BitTorrent is a type of P2P (Peer-to-Peer) software that sets up its searches by keywords, typically on torrent websites. The results of a keyword search are displayed to the user. The website does not contain the files being shared, only the file referred to as a torrent. The user then selects a torrent file(s) from the results for download. This torrent file contains instructions on how a user can download the file(s) referenced in the torrent. The download of a file is achieved through a direct connection between the computer requesting the file and the computer(s) sharing the actual files (not the torrent file but the actual files referenced in the torrent file using any BitTorrent client.)

12.     Using a computer running investigative BitTorrent software, a direct connection was made to a device utilizing IP address 100.16.46.54. On the same date, a download was completed for all or part of the files that the device using IP address 100.16.46.54 was making available. I have reviewed that content that was downloaded, and chosen two files to describe below:

> **Filename:** Sandra-mix-52.jpg
> **Description:** An image, depicting a nude pre-pubescent female laying on a bed. The minor female's vagina is exposed in a lewd and lascivious manner.
>
> **Filename:** SandraSkirt4.jpg
> **Description**: An image depicting a pre-pubescent female, wearing a pink dress, and seated on a log outside. The minor female's legs are spread, and her skirt is raised to expose her vagina.

13.     On September 27, 2021, in response to a lawful subpoena, Verizon provided records associated with IP address 100.16.46.54 during the time of the distribution. Verizon confirmed the account owner was "Lucille Wyatt" at 2800 Page Court, Fallston, Maryland. A query though the Maryland Motor Vehicle Administration (MVA) confirmed that Robert Jackson WYATT JR, born in 1968, also resided at the Page Court residence. Further investigation revealed that WYATT JR was indicted in federal court in 2001 for possession of child pornography and was subsequently convicted.

14.     On October 21, 2021, the Maryland State Police and Homeland Security Investigations executed a state search warrant at the WYATT residence. WYATT JR was not at the residence at the time of entry. Investigators discovered WYATT JR's vehicle at the marina where he keeps his boat in Edgewood, Maryland. WYATT JR. was surveilled as he left the marina and returned to the Page Court residence but was not contacted prior to his arrival at the residence.

15.     WYATT JR waived his Miranda rights and agreed to an interview where he stated that he utilizes peer-to-peer filesharing software and is familiar with the concept of torrents but

denied utilizing it to distribute, view, or possess child pornography. During the interview,

WYATT JR also provided written consent for a search or his cellular phone (a black Samsung

cell phone with IMEI: 355676111105696). During an on-scene forensic preview, several files of

child pornography were discovered. I have reviewed the files and selected two, which can be

described as follows:

> **Filename:** -5260726654723011699_121.jpg
> **Description:** This is a color photograph that depicts an adult male standing over a
> nude pre-pubescent female holding his penis. The juvenile female is lying flat on the
> ground and there is a clear/white substance that appears to be seminal fluid on her
> abdomen.
>
> **Filename:** -5330478139085796498_109.jpg
> **Description:** This is a color photograph that depicts an adult male rubbing his penis
> against the exposed genitals of a pre-pubescent female. Only the juvenile female's
> genitals and thighs are visible in the photograph. An "Emoji" displaying a female's
> face and a lollipop are visible in the top left corner of the image.

16.     WYATT JR voluntarily accompanied law enforcement to the MSP Bel Air

Barrack and was re-interviewed after having been re-read his Miranda rights. WYATT JR

acknowledged having a peer-to-peer filing sharing program installed on his phone and advised

law enforcement that he alone exercised control over his phone. WYATT JR was arrested on

state charges and transported to the Harford County Detention Center.

17.     After completing a search of the Page Court Residence, the following items were

seized from the residence or WYATT JR.'s person and are the subject of this warrant (the

**TARGET DEVICES)**, which are listed below:

>     a.  One Samsung Galaxy S4 cellular telephone
>     b.  One Verizon Ellipsis, Model QTAQ23 with IMEI: 353610060081477
>     c.  One Ultra Computer Tower, Model: SYK-DH67BL
>     d.   One black Samsung cellular phone with IMEI: 355676111105696

18.     On October 26, 2021, the Maryland State Police and Homeland Security

Investigations executed a search warrant on WYATT JR's boat "Fat Beach," which was located

at a marina in Edgewood, Maryland. Pursuant to the warrant, three USB devices and one cellular

phone were located. On March 1, 2022, the devices seized from WYATT JR's boat were turned

over to Homeland Security Investigations for a forensic analysis.

19.     On March 8, 2022, Your Affiant received a partial analysis of the devices seized

from WYATT JR.'s boat, from an HSI Computer Forensic Agent which consisted of a full

analysis of a 64GB Micro Center with Serial Number TAHI191000757 and a partial analysis

from a 32GB SanDisk Ultra with Serial Number SDCZ48. Within these two USB devices,

thousands of files of child pornography were discovered. I have reviewed content from both

devices and randomly selected four files, which are described as follows:

**Filename:** (pthc).NO.BS_.Daddy's.Little.Whore.Needs.Sex.Every.Day.At.5YO!!!.(Newage.Frifam.BabyJ.A++).wmv
**Device:** 64GB Micro Center
**Description:** This video is approximately nine minutes and one second in length that depicts an adult male engaging in various sex acts with a pre-pubescent female. The sex acts include vaginal intercourse, anal intercourse, and digital penetration. At various points during the video, text is visible and includes "Baby's first time with me", "Tight Pussy and Ass She is a Great Fuck!", and "Going Fuck Her Again and Give a Load Of My Cum In Her Cunt".

**Filename:** DD-bdsm2.mp4
**Device:** 64GB Micro Center
**Description:** This video is approximately 9 minutes and forty seconds in length and depicts an adult female engaging in various acts of torture and sadomasochistic sexual abuse against a nude female toddler. The juvenile female is hung upside down nude and is repeatedly physically assaulted by the adult female. On multiple occasions, the nude adult female places the infant's head against her exposed vaginal area. The toddler's exposed genitals are burned by fire during the video.

**Filename:**  Vicky anal.mp4
**Device:** 32GB SanDisk Ultra
**Description:** This video is approximately thirty seconds in length of an adult male penetrating the anus of a pre-pubescent female with his erect penis. The minor's face and undeveloped chest are visible in the video.

**Filename:** e.mp4
**Device:** 32GB SanDisk Ultra
**Description:** This video is approximately fifty-seven seconds in length and depicts an adult male penetrating and ejaculating into a pre-pubescent female's vagina. The minor is nude from the waist down. The minor's face can be observed at certain points during the video.

20.     On April 6, 2022, WYATT JR was indicted and charged with violations of 18 U.S.C. § 2252A(a)(2) and (b)(1), distribution of child pornography, and  18 U.S.C. § 2252A(a)(5)(B) and (b)(2), possession of child pornography under Criminal Case no. SAG-22-126

21.     On August 17, 2022, the **TARGET DEVICES** seized from the WYATT JR,'s residence and person were brought to Homeland Security Investigations, 40 S. Gay Street, Baltimore, Maryland. The **TARGET DEVICES** have been in the custody of the Maryland State Police since the search warrant on October 21, 2021, and no further forensic analysis has been completed.

## CONCLUSION

22.     Based on the above information, there is probable cause to believe that the **TARGET OFFENSES** have been violated, and that the property, evidence, fruits, and instrumentalities of these offenses listed in Attachment B, which is incorporated herein by reference, are located in the **TARGET DEVICES** further described in Attachment A.

23.     Based upon the foregoing, I respectfully request that this Court issue search warrants for the **TARGET DEVICES**, more particularly described in Attachments A authorizing the seizure of the items described in Attachment B.

KELLY M
DIANTONIO
Digitally signed by
KELLY M DIANTONIO
Date: 2022.08.29
11:30:07 -04'00'

Kelly M. DiAntonio
Special Agent
Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on this <u>30th</u> day of <u>  August  </u> 2022.

_____

HONORABLE MATTHEW J. MADDOX
UNITED STATES MAGISTRATE JUDGE

16

22-mj-2450-MJM

**ATTACHMENT A**
**DESCRIPTION OF LOCATION TO BE SEARCHED**

The following is a list of items seized from 2800 Page Court, Fallston, Maryland 21047, and
WYATT JR.'s person, and currently stored at Homeland Security Investigations, 40 S. Gay Street,
Baltimore, Maryland:

    a.   One black Samsung cellular phone with IMEI: 355676111105696
    b.   One Samsung Galaxy S4 cellular telephone
    c.   One Verizon Ellipsis, Model QTAQ23 with IMEI: 353610060081477
    d.   One Ultra Computer Tower, Model: SYK-DH67BL

**ATTACHMENT B**
**DESCRIPTION OF ITEMS TO BE SEIZED**

All records, documents, items, data, and other information that may constitute fruits or instrumentalities of, or contain evidence related to, violations of Title 18, United States Code, Sections 2252A(a)(2) and 2252A(a)(5)(B), including, but not limited to, the following that may be found in the devices described in Attachment A:

1.      Any and all images, videos, notes, documents, records, or correspondence pertaining to minors engaged in sexually explicit conduct.

2.      Any and all records, documents, invoices, and materials that concern any online accounts including Facebook, Instagram, Skype, or any other account that allows chatting, e-mail, or video chats over the Internet, including screen names and e-mail addresses.

3.      Any and all records, documents, invoices, and materials that concern any accounts with Internet Service Providers.

4.      Any and all records reflecting personal contact and any other activities with minors.

5.      Any and all documents, records, or correspondence pertaining to occupancy at 2800 Page Court, Fallston, Maryland 21047.

6.      Any and all records, or correspondence, including images or videos, that indicate a sexual interest in children or communications with children regarding sexual activity, including, but not limited to:
        a.      Correspondence with children;
        b.      Any and all visual depictions of minors;
        c.      Internet browsing history;
        d.      Books, logs, diaries, and other documents.

7.      Any and all records relating to persuading, inducing, enticing, or coercing any minor to engage in any sexual activity in violation of the law.

8.      Any and all records relating to transmitting obscene materials to minors.

9.      Evidence of who used, owned, or controlled each device described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, "chat," instant messaging logs, photographs, and correspondence;

        a.      evidence of software that would allow others to control each device described in Attachment A, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

18

b.  evidence of the lack of such malicious software;

c.  evidence of the attachment to each device described in Attachment A of other storage devices or similar containers for electronic evidence;

d.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from each device described in Attachment A;

e.  evidence of the times each device described in Attachment A was used;

f.  passwords, encryption keys, and other access devices that may be necessary to access each device described in Attachment A;

g.  documentation and manuals that may be necessary to access each device described in Attachment A or to conduct a forensic examination of each device described in Attachment A; and

h.  contextual information necessary to understand the evidence described in this attachment.

10.  With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software, or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

a.  surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

b.  "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

c.  "scanning" storage areas to discover and possible recover recently deleted files;

d.  "scanning" storage areas for deliberately hidden files; or

e.  performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

19

11.     If after performing these procedures, the directories, files, or storage areas do not reveal evidence of child pornography or other criminal activity, the further search of that particular directory, file, or storage area shall cease.

12.     With respect to the search of the information seized pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.  If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review.  The investigative team will take no further steps regarding any review of information so segregated absent further order of the Court.  The investigative team may continue to review any information not segregated as potentially privileged.